# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MARTIN ROBINSON, | ) | Case No. 3:23-cv-01611 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jennifer Dowdell Armstrong |
| LONNIE BUTLER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Martin Robinson, an Ohio prisoner incarcerated at the Toledo Correctional Institution, filed this action without a lawyer against 71 Defendants, including prison staff, employees of the Ohio Department of Rehabilitation and Correction, the American Correctional Association, Ohio Governor Mike DeWine, Ohio Attorney General Dave Yost, a federal district court judge and a federal magistrate judge from the Southern District of Ohio, and the Ohio Supreme Court. (ECF No. 1.)  He alleges violations of his federal civil rights under 42 U.S.C. § 1983 for incidents that allegedly occurred during his previous incarcerations at London Correctional Institution, Warren Correctional Institution, and Madison Correctional Institution, as well as his current incarceration in Toledo.  Plaintiff seeks injunctive and monetary relief.

Previously, the Court severed Plaintiff's claims relating to the London, Warren, and Madison Correctional Institutions and transferred them to the United States District Court for the Southern District of Ohio, where those institutions are

located, leaving the claims in this action that arise from Plaintiff's confinement at the Toledo Correctional Institution. (ECF No. 8.) Further, the Court dismissed Plaintiff's claims against several Defendants. After that ruling, this action is proceeding against: the Ohio Department of Rehabilitation and Correction; Annette Chambers-Smith; Chief Inspector Chris Lambert; Assistant Director Stuart Hudson; Major Brown; Warden K. Henderson; Deputy Warden Denman; Dr. Porter; Dr. De La Cruz; Ms. K; Regional Director E. Sheldon; and the American Correctional Association. (*Id.*, PageID #89.) These Defendants filed two separate motions to dismiss: the Ohio Attorney General filed one on behalf of the Ohio Department of Rehabilitation and Correction and its officers and employees (ECF No. 19), and the American Correctional Association filed another (ECF No. 24). In this ruling, the Court takes up both motions.

## STATEMENT OF FACTS

On Defendants' motions to dismiss, the complaint alleges the following facts, which the Court accepts as true and construes in the light most favorable to Plaintiff as the non-moving party, as it must in the present procedural posture.

### A. The Alleged Incidents at Toledo Correctional

Currently, Plaintiff Martin Robinson is incarcerated at the Toledo Correctional Institution in Toledo, Ohio. (ECF No. 1, PageID #2.) Previously, he worked as a correctional officer with the Ohio Department of Rehabilitation and Correction. (*Id.*, ¶ 2, PageID #3.) He claims that he "is a whistleblower being illegally detained or imprisoned by his former employer." (*Id.*, ¶ 1, PageID #2.) According to the complaint, the prison's surveillance cameras captured the majority of the incidents

2

outlined in the complaint (*id.*, ¶ 35, PageID #14), which the Court groups by their common themes.

### A.1.  Failure to Intervene

Since August 2019, "different prison officials started informing other inmates that Mr. Robinson used to be a former Correctional Officer," allegedly putting his life in danger.  (*Id.*, ¶ 2, PageID #2–3.)  He claims that these unidentified prison officials told him "that one day he would be killed."  (*Id.*, ¶ 2, PageID #3.)  Mr. Robinson alleges that he requested to be segregated from the other inmates and put on surveillance so that "the attacks and false conduct reports would stop."  (*Id.*)

Mr. Robinson claims that he contacted Annette Chambers-Smith, the Director of the Ohio Department of Rehabilitation and Correction, and other senior Department staff (Assistant Director Stuart Hudson, and Chief Inspector Chris Lambert) multiple times to make them aware of the threats against him.  (*Id.*, ¶ 3, PageID #3.)  Mr. Robinson alleges that they failed to intervene, allowing these attacks on Mr. Robinson to continue.  (*Id.*, ¶ 4, PageID #3.)  Further, he alleges that he made the warden aware "of staff on inmate assault" and requested the filing of a formal criminal complaint.  (*Id.*, ¶ *1 21, PageID #11.)

### A.2.  Deliberate Indifference to Medical Needs

According to Mr. Robinson, "Ms. K"—who Defendants identified as Hannah Kroggel, a health care administrator at the institution—was made aware of the permanent disabilities Mr. Robinson suffered that made it difficult for him to use the stairs.  (*Id.*, ¶ 20, PageID #11.)  Despite this knowledge, and although the facility has elevators, Ms. Kroggel allegedly told Mr. Robinson to "use the stairs."  (*Id.*)  After

months of allegedly attending doctors' appointments to address his difficulty using stairs due to his permanent disabilities, Mr. Robinson claims he fell down the stairs in May 2022 and fell in the day room in June 2022—the first time while on his way to recreation and the second time while getting his lunch tray.  (*Id.*)  According to Mr. Robinson, Defendant Matthew Denman, Deputy Warden of Special Services, who was the medical supervisor at the time, was made aware of what Mr. Robinson describes as "deliberate indifference and improper health care," but failed to "properly supervise his subordinates according to the employee code of conduct and contractual agreements" to ensure that proper care was provided to Mr. Robinson.  (*Id.*)  Further, Mr. Robinson alleges that unit management denied his request to be housed in a handicapped cell.  (*Id.*, ¶ 26, PageID #12.)

Mr. Robinson alleges that the institution's mental health providers removed him from their caseload and has not provided him with assistance.  (*Id.*, ¶ 22, PageID #11.)  He claims that Defendant Dr. De La Cruz refused to give him proper health care, such as accepting his requests or recommendations to see a specialist, prescribing pain medication, scheduling him for a round trip outside hospital appointment, and following proper fall protocol.  (*Id.*, ¶ 23, PageID #11–12.)  Mr. Robinson claims that Dr. De La Cruz told him that she would recommend physical therapy and would not take his walker from him for 30 days, despite allegedly previously telling him that they did not offer physical therapy or referrals to specialists.  (*Id.*, ¶ 27, PageID #12.)  According to Mr. Robinson, his attempts to get approval for an emotional support animal and for a prescription for medical

4

marijuana have failed, even though he claims that he has more than one medical or psychiatric diagnosis that qualifies him for such support.  (*Id.*, ¶ 34, PageID #13–14.)

### A.3.  Excessive Force and Theft of Property

On an unknown date, Mr. Robinson alleges that he was forced to submit to a strip search without cause.  (*Id.*, ¶ 19, PageID #10–11.)  Defendant Major Brown allegedly threatened to use force if Mr. Robinson refused to submit to the search, including the use of a "pepper ball gun."  (*Id.*)  Subsequently, when Mr. Robinson refused to submit to the search, unnamed individuals allegedly pushed him in the chest or shoulder.  (*Id.*, ¶ 19, PageID #11.)

On July 13, 2022, Mr. Robinson alleges that he was unnecessarily removed from his cell by use of excessive force.  (*Id.*, ¶ 21, PageID #11.)  He claims that during a period while he was "in the hole" and "on hunger strike," prison staff lost or stole some of his property.  (*Id.*)  When he notified unit management about the loss of his property, both orally and in writing, he alleges that they refused to document the incident, return the property, or investigate where or what happened to his property. (*Id.*)  According to Mr. Robinson, Toledo Correctional "must obtain a court order to destroy any property labeled as contraband."  (*Id.*)  Mr. Robinson alleges that the institution took or denied him his property improperly—on the mistaken belief that Toledo Correctional is a maximum security prison, "but we are not maximum security level inmates."  (*Id.*, ¶ 30, PageID #12.)

### A.4.  Retaliation

Mr. Robinson claims that he is considered indigent pursuant to regulations that govern the Ohio Department of Rehabilitation and Correction.  (*Id.*, ¶ 32, PageID

#13.)  He alleges that the cashier's office denied his indigency claim because Mr. Robinson received $17.00 per month, which is over the designated twelve-dollar amount.  (*Id*.)  Because Mr. Robinson believes that the cashier incorrectly denied his status as indigent, he filed a grievance and claims that the Chief Inspector's Office inappropriately responded to the grievance.  (*Id*.)  On June 14, 2023, the Chief Inspector's Officer allegedly closed out the complaint, which Mr. Robinson claims was inappropriate.  (*Id*.)

In violation of the Department's regulations and policies, Mr. Robinson alleges that Chief Inspector Lambert refused to print paper copies of "inappropriate [and] false" responses by staff regarding any informal complaints Mr. Robinson made.  (*Id*., ¶ 33, PageID #13.)  Mr. Robinson claims that he was suspended twice for 90 days each from filing any more grievances, an action which Mr. Robinson claims constitutes retaliation for his grievances.  (*Id*.)

Finally, Mr. Robinson lists additional incidents, which the Court collects under this heading, though some might more appropriately be styled as allegations of general violations of the Department's policies and procedures:

*First*, on April 19, 2023, Edward Sheldon, a regional director of the Ohio Department of Rehabilitation and Correction, visited Toledo Correctional.  (*Id*., ¶ 29, PageID #12.)  When Mr. Robinson raised complaints, Mr. Sheldon allegedly responded, "I'm not here for your ass," which Mr. Robinson claims was inappropriate and unprofessional.  (*Id*.)

*Second*, according to the complaint, on or about January 5, 2020, the Ohio Department of Rehabilitation and Correction permanently banned a woman he identifies as Maiya McCoy from visiting him.  (*Id.*, ¶ 18, PageID #10.)  Although he was not at Toledo Correctional at the time, Mr. Robinson alleges that Toledo Correctional "refuses to lift the ban and reinstate Ms. McCoy as an approved visitor" or even to allow him to have video visits with her.  (*Id.*)

*Third*, Mr. Robinson alleges that Deputy Warden Denman did not allow him to attempt to further his education by studying to receive another college or master's degree with Ashland University.  (*Id.*, ¶ 31, PageID #13.)  He claims that the Ohio Department of Rehabilitation and Correction refused to accept his high school diploma and bachelor's degree as proof of his academic achievements.  (*Id.*)

### B.    The American Correctional Association's Audit

Mr. Robinson alleges that Toledo Correctional had multiple health and safety violations, but still passed an audit that the American Correctional Association performed with 100% compliance on mandatory standards and 98.5% compliance on non-mandatory standards.  (*Id.*, ¶ 24, PageID #12.)  He claims that the Association should be held liable for fraud and "should be made to look at the number of suicides or deaths of incarcerated" at the institution.  (*Id.*, ¶ 25, PageID #12.)  The American Correctional Association is a nongovernmental corporation.  (ECF No. 17.)  Although the Court's Standing Order requires the filing of an answer, the American Correctional Association failed to do so.  It presents additional factual background in its motion to dismiss, which the Court disregards in the current procedural posture, which requires that the Court take Plaintiff's allegations as true.

7

## STATEMENT OF THE CASE

On February 17, 2021, Plaintiff filed a prior civil rights complaint relating to the conditions of his confinement at the London Correctional Institution, Warren Correctional Institution, and Madison Correctional Institution.  *See Robinson v. Butler*, No. 1:21-cv-382 (N.D. Ohio) ("*Robinson I*").  The Court transferred that action to the Southern District of Ohio, which dismissed it for failure to prosecute.  *Robinson v. Butler*, No. 2:21-cv-774, 2022 WL 1487065, at *1 (S.D. Ohio May 11, 2022).  Mr. Robinson also failed to prosecute his appeal from that dismissal.  *See Robinson v. Butler*, No. 22-351, 2023 WL 3868660, at *1 (6th Cir. Apr. 4, 2023).

On August 17, 2023, Plaintiff filed this *pro se* complaint ("*Robinson II*"), raising claims against each Defendant in both their individual and official capacities under 42 U.S.C. § 1983, and noting that this case might be a refiling of *Robinson I*.  (ECF No. 1; ECF No. 1-1.)  Plaintiff's complaint in *Robinson II* includes additional allegations regarding his current incarceration at the Toledo Correctional Institution.  (ECF No. 1, ¶¶ 18–36, PageID #10–14.)

On January 2, 2024, the Court severed Plaintiff's claims concerning the conditions of his confinement at London Correctional, Warren Correctional, and Madison Correctional and transferred them to the Southern District of Ohio.  (ECF No. 8, PageID #80–81.)  Also, the Court dismissed Plaintiff's claims against certain Defendants.  (*Id.*)  As a result, this action only involves Plaintiff's claims concerning the conditions of his confinement at Toledo Correctional.  (*Id.*, PageID #89.)  Of those Defendants who remain in this case, the State Defendants and the American

8

Correctional Association separately moved to dismiss.  (ECF No. 19; ECF No. 24.)
Plaintiff did not respond to either motion, though he made other filings since then.

## ANALYSIS

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim
on which a court may grant relief.  Fed. R. Civ. P. 12(b)(6).  A motion under Rule
12(b)(6) tests "the plaintiff's cause of action as stated in the complaint," and is "not a
challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d
950, 958–59 (6th Cir. 2005).  A complaint must "contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).  A claim is plausible where "the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  To survive a motion to
dismiss, a complaint must "raise a right to relief above the speculative level" into the
"realm of plausible liability."  *Twombly*, 550 U.S. at 555, 557 n.5.

On a motion to dismiss, the Court construes factual allegations in the light
most favorable to the plaintiff, accepts them as true, and draws all reasonable
inferences in the plaintiff's favor.  *Wilburn v. United States*, 616 F. App'x 848, 852
(6th Cir. 2015) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  But
a pleading must offer more than mere "labels and conclusions," and "a formulaic
recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678
(quoting *Twombly*, 550 U.S. at 555).  Nor is a court required to accept "[c]onclusory

allegations or legal conclusions masquerading as factual allegations." *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *Iqbal*, 556 U.S. at 678 (cleaned up); *see also, e.g., Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were not well-pled, their conclusory nature disentitled them to the presumption of truth). A plaintiff need not include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

Although the pleadings and documents *pro se* litigants file are liberally construed and held to less stringent standards than the formal pleadings of lawyers, *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Even a *pro se* complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to avoid dismissal. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## I.     The State Defendants' Motion to Dismiss

On behalf of the current and former officers and employees of the Ohio Department of Corrections, the State of Ohio moves to dismiss, arguing that (1) the statute of limitations bars any of Plaintiff's claims which accrued before August 17,

2021; and (2) Plaintiff fails to state a claim for relief on any of his claims. (ECF No. 19, PageID #292–98.) The Court addresses each argument in turn.

### I.A. Statute of Limitations

Courts may grant motions to dismiss on the grounds of an applicable statute of limitations only if "the allegations in the complaint affirmatively show that the claim is time-barred." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)). Section 1983 itself does not provide a statute of limitations. In such circumstances, federal courts borrow the applicable limitations period from the most analogous one available under State law. *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989). Here, the most closely analogous limitations period under Ohio law is the general two-year limitations period for bringing a tort action. *See* Ohio Rev. Code § 2305.10; *see Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc).

When a cause of action under Section 1983 accrues presents "a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). In *Wallace*, the Supreme Court recognized "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)) (cleaned up).

Ignoring the severance of the claims which limits the scope of this lawsuit, Defendants direct most of their timeliness argument to incidents occurring at the London, Warren, and Madison Correctional Institutions. (ECF No. 19, PageID #292.)

11

Relating to Toledo Correctional in particular, Defendants address a single allegation—Mr. Robinson alleges that Toledo Correctional "refuses to lift" a ban on visits from Maiya McCoy dating to June 5, 2020. (ECF No. 1, ¶ 18, PageID #10.) If this claim challenged the ban directly, the Court would agree that it is untimely because it predates the filing of this action by more than two years. However, Mr. Robinson alleges that Toledo Correctional refuses to lift that ban. His complaint challenges the conduct of his present institution. He does not identify the first date on which Toledo Correctional refused to lift the ban. If that refusal predates August 17, 2021, it is untimely. But not if it came later. In the present procedural posture, in which the Court must construe the complaint in Plaintiff's favor, and in light of the rule that a court may dismiss based on a statute of limitations only where the complaint is clearly time-barred, the Court cannot say that Defendants clearly establish the untimeliness of this claim.

### II.B.  Plaintiff's Section 1983 Claims

Plaintiff alleges that the State Defendants are liable in their official and individual capacities under Section 1983 for alleged violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (ECF No. 1, ¶¶ 1, 4 & 18, PageID #1–3, 10 & 16.)  Plaintiff alleges several of these constitutional violations generally at the beginning and end of his complaint without providing much of a connection between the incidents at Toledo Correctional he details and the violations of his rights he claims.  Nonetheless, the Court construes Plaintiff's *pro se* complaint liberally and attempts to identify the constitutional claims at issue. *See Martin*, 391 F.3d at 712.

To state a claim under Section 1983, Plaintiff must allege: (1) "a right secured by the United States Constitution;" and (2) "the deprivation of that right;" (3) "by a person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (abrogated on other grounds)). Defendants argue that Plaintiff fails to state a claim on which relief can be granted for all claims against them. (ECF No. 19, PageID #292–98.)

### II.B.1. Supervisory Liability

To state a claim against a governmental official in his individual-capacity, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). "[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). In other words, a supervisor or other governmental official is not vicariously liable for the violations of a person's civil rights that another commits. To state a claim under Section 1983 for the violation of a civil right, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Liability must be based on each defendant's own "active unconstitutional behavior." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). The plaintiff must allege facts suggesting that each defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the [challenged action]." *Id.*

13

At the very least, the individual defendant must have "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)). A defendant must have "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* at 355 (quoting *Phillips*, 534 F.3d at 543). To prevail on an individual supervisory liability claim under Section 1983, a plaintiff must show that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). "[A] supervisor's failure to act, without more, is insufficient to establish supervisory liability." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio 2020) (citing *Peatross*, 818 F.3d at 241). Mere failure to act cannot establish individual liability. *Essex*, 518 F. App'x at 355 (6th Cir. 2013) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).

Several of Plaintiff's claims fail to establish whether various Defendants who are officers or employees of the Ohio Department of Rehabilitation and Correction played any personal role in the alleged violations of Mr. Robinson's civil rights. Plaintiff alleges that Ms. Chambers-Smith, the Department's Director, Assistant Director Hudson, and Chief Inspector Lambert "breached their duty" under 18 U.S.C. § 242 and 42 U.S.C. § 1983 after they "were contacted many times and made aware" of Plaintiff's "occurrences," presumably the incidents alleged in the complaint at

14

Toledo Correctional about which Mr. Robinson complains.  (ECF No. 1, ¶ 3, PageID #3.)  Further, Plaintiff alleges that Ms. Chambers-Smith and Assistant Director Hudson "failed to intervene allowing Mr. Robinson to be beaten and attacked on many occasions thereafter."  (*Id.*, ¶ 4, PageID #3.)  Similarly, Plaintiff claims that, by requesting a formal criminal complaint from Warden Henderson, he "ma[de] her aware of staff on inmate assault."  (*Id.*, PageID #11.)  Also, he claims that he made Deputy Warden Denman aware of "medical's deliberate indifference and improper health care on more than one occasion, both verbally and in writing" and that he "failed to properly supervise his subordinates according to the employee code of conduct and contractual agreements and ensure [Plaintiff] receives the proper medical, mental, and dental health care."  (*Id.*, ¶ 20, PageID #11.)

Allegations that these Defendants were aware of these alleged incidents or misconduct fail, as a matter of law, to give rise to supervisory liability.  *Hollis*, 480 F. Supp. 3d at 833 (citing *Peatross*, 818 F.3d at 241).  In *Hollis*, the court determined that the warden in that case was not liable under Section 1983 in part because the plaintiffs had merely alleged that the warden had failed to act, which was "not enough."  *Id.* at 834.  Specifically, the court determined that the mere allegation that "the Warden generally knew of a potential risk that could potentially result in harm of some kind at some point in time, and should have done more to prevent that possible harm," was "not enough for personal liability."  *Id.* at 835–36.  Further, "[t]he 'denial of administrative grievances or the [mere] failure to act' by prison officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*, 532 F.3d

567, 576 (6th Cir. 2008) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Plaintiff has not pled that any of these Defendants "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct." *Hollis*, 480 F. Supp. 3d at 835 (quoting *Phillips*, 534 F.3d at 543).

Nor may Plaintiff rely on 18 U.S.C. § 242 for his claims. Such claims under this statute are barred because "18 U.S.C. § 242 is a criminal statute and Plaintiff has no private right of action thereunder." *Clark v. Ohio*, No. 2:24-cv-4069, 2025 WL 372990, at *4 (S.D. Ohio Feb. 3, 2025) (quoting *McConaughy v. Felton*, No. 2:21-cv-3927, 2021 WL 3288114, at *2 (S.D. Ohio Aug. 2, 2021)).

*     *     *

Taking the allegations of the complaint as true, the Court concludes, as a matter of law, that Plaintiff fails to state a claim for supervisory liability against Ms. Chambers-Smith, Director of the Department, Assistant Director Hudson, Warden Henderson, Chief Inspector Lambert, or Deputy Warden Denman.

### II.B.2. Failure to Allege Unconstitutional Conduct

Section 1983 provides a remedy "for deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).

### II.B.2.a. Regional Director Sheldon

Plaintiff alleges that, when he told Regional Director Sheldon that he had complaints, he allegedly responded "I'm not here for your ass," which Plaintiff claims was inappropriate and unprofessional. (ECF No. 1, ¶ 29, PageID #12.) This allegation fails to state a claim under Section 1983. *See Pierson v. Neil*, No. 1:19-cv-

16

843, 2019 WL 5781948, at *3 (S.D. Ohio Nov. 6, 2019) (determining that the plaintiff's allegations that guards used profanity and threats against inmates failed to state a claim under Section 1983). "It is well-settled that '[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Id.* (citations omitted). "A prison official's use of . . . insults, 'although unprofessional and reprehensible, does not rise to the level of constitutional magnitude' and is insufficient to support a constitutional claim for relief." *Id.* (citations omitted).

### II.B.2.b. Deputy Warden Denman

Plaintiff claims that Deputy Warden Denman did not allow him to "further his education with another college degree or a master's program" and that the Department refused to accept his high school diploma and bachelor's degree as proof of his "academic achievements." (ECF No. 1, ¶ 31, PageID #13.) Further, Plaintiff alleges that he was not allowed to "participate in college or graduate work with Ashland University." (*Id.*) These allegations fail to state a claim against Deputy Warden Denman or the Department. "[A] prisoner has no constitutional right to rehabilitation, education, or jobs." *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001) (citations omitted); *see also Ziegler v. McGinnis*, 32 F. App'x 697, 699 (6th Cir. 2002) (determining that a "prisoner has no constitutional right to rehabilitation or education") (citations omitted); *Moore v. Chavez*, 36 F. App'x 169, 170 (6th Cir. 2002) (determining that the plaintiff, a prisoner, "had no constitutional right to take an educational course").

\*     \*     \*

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims against Regional Director Sheldon, Deputy Warden Denman, and Plaintiff's claims related to educational and rehabilitative services.

### II.B.3. State Agencies

Defendants argue that Plaintiff fails to state a claim against the Ohio Department of Rehabilitation and Correction and the Toledo Correctional Institution because they are not considered persons under Section 1983.  (ECF No. 19, PageID #294.)  "[M]ultiple courts have found that ODRC is not a 'person' subject to suit under 42 U.S.C. § 1983."  *Vizcarrondo v. Ohio Dep't of Rehab. & Corr.*, No. 1:18-cv-01255, 2019 WL 6251775, at \*5 (N.D. Ohio Nov. 22, 2019); *see also Peeples v. Department of Rehab. and Corr.*, No. 95-3117, 1995 WL 445714, at \*1 (6th Cir. July 26, 1995) (affirming dismissal of Section 1983 suit against the Department because "a state is not a 'person' subject to suit under § 1983"); *Henton v. Ohio Dep't of Rehab. & Corr.*, No. 1:19-cv-462, 2019 WL 4346266, at \*1 (N.D. Ohio Sept. 12, 2019) (determining that the Department is not a "person" under Section 1983 because it "is an agency of the State of Ohio").  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims against the Department and Toledo Correctional as an institution within it.

### II.B.4. Deliberate Indifference and Gross Negligence

In connection with incidents of falling in the day room and down stairs, Plaintiff accuses Dr. Porter and Ms. Kroggel of gross negligence.  (ECF No. 1, ¶ 20, PageID #11.)  Further, although Plaintiff only states the phrase "deliberate

18

indifference" regarding "medical," Defendants interpret this complaint to bring this claim against Dr. Porter and Dr. De La Cruz.  (ECF No. 19, PageID #294–95.)  The Court agrees and liberally construes Plaintiff's claims against "medical" to extend to Dr. Porter, Dr. De La Cruz, and Ms. Kroggel.  *See Martin*, 391 F.3d at 712.

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference toward [his] serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "The Eighth Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency' against which courts must evaluate penal measures." *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (quoting *Estelle*, 429 U.S. at 102).

To succeed on such a claim, Plaintiff must meet an objective as well as subjective test.  *Blackmore*, 390 F.3d at 895 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Defendants contend that Plaintiff's complaint does not satisfy either. (ECF No. 19, PageID #294–95.)

### II.B.4.a. Objective Test

The objective test requires Plaintiff to "plead facts which, if true, establish the existence of a 'sufficiently serious' medical need." *Reilly*, 680 F.3d at 623 (quoting *Blackmore*, 390 F.3d at 895).  A sufficiently serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

19

Plaintiff claims that he "went to Dr.'s appointments and kited regarding his difficulty using stairs because of his permanent disabilities . . . as well as re-injuries and new injuries . . . all of which Robinson has informed Defts. ODR&C; Doctors; Nurses; Mental Health, and appropriate supervisors about." (ECF No. 1, ¶ 20, PageID #11.) In addition, Plaintiff claims that he made "requests or recommendations" to Dr. De La Cruz "to see a specialist, such as a neurologist or foot doctor, hearing doctor, or eye doctor," which he was allegedly refused. (*Id.*, ¶ 23, PageID #11–12.) Further, Plaintiff alleges that he used a walker and that Dr. De La Cruz told him that she would recommend physical therapy for him and not take away his walker for a period of time. (*Id.*, ¶ 27, PageID #12.) Taking Plaintiff's allegations as true, these conditions were sufficiently serious and obvious to survive the objective test at this stage of the proceedings. *Harrison*, 539 F.3d at 518; *see also Taylor v. Franklin Cnty., Ky.*, 104 F. App'x 531, 538 (6th Cir. 2004) (determining that "obvious signs" of "debilitating immobility were clear symptoms of a serious problem" for purposes of satisfying the objective test for deliberate indifference, "even if Defendant did not chose [*sic*] to believe Plaintiff").

### II.B.4.b. Subjective Test

For the subjective test, Plaintiff "must demonstrate Defendants acted with 'a sufficiently culpable state of mind in denying medical care.'" *Reilly*, 680 F.3d at 624 (quoting *Blackmore*, 390 F.3d at 895). A defendant has a sufficiently culpable state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith

error." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Plaintiff "'must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  *Id.*  The Court applies this subjective test to the actions of each individual Defendant based on the allegations in the complaint.

### II.B.4.b.i. Health Care Administrator Kroggel

Defendants claim that Plaintiff's complaint "fails to allege any personal wrongdoing whatsoever against . . . Health Care Administrator" Ms. Kroggel and that "nowhere does the Complaint plead the active unconstitutional conduct required to state a constitutional claim under § 1983 against [her]."  (ECF No. 19, PageID #294.)  Plaintiff alleges that "[k]nowing [the] information [regarding Mr. Robinson's permanent disabilities] and that the facility already has elevator access, Deft. HCA, 'Ms. K' answered in a kite, 'use the stairs.'"  (ECF No. 1, ¶ 20, PageID #11.)  Plaintiff does not specify when this interaction occurred, but goes on to claim that in May 2022 he fell down a flight of stairs going to recreation and fell again in the day room in June 2022 "attempting to walk (without the necessary assistance due to . . . HCA 'Ms. K's . . . gross negligence in both cases) to get his lunch tray."  (*Id.*)  Plaintiff's claim that Ms. Kroggel acted negligently in these instances is conclusory, and a legal conclusion in any event.  At this stage of the proceedings, the Court takes as true the allegation that Ms. Kroggel knew of Mr. Robinson's disabilities, he notified her of his difficulty using the stairs because of his disabilities, and Ms. Kroggel told him to use the stairs nonetheless.  *Eidson*, 510 F.3d at 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).  Plaintiff alleges that his fall in May 2022 involved his use of the stairs. (ECF No. 1, ¶ 20, PageID #11.)

"Courts . . . have concluded that forcing an inmate with an obvious impairment to walking to descend stairs without adequate assistance presents a triable issue of fact as to deliberate indifference." *Krontz v. Westrick*, No. 3:08-cv-46, 2009 WL 2633761, at *3 (N.D. Ohio Feb. 9, 2009) (citing cases from other circuits in which prison officials knew of the plaintiff's leg impairment but "nevertheless required him to go down stairs"). There, the court reasoned that "[a] rational jury could find that the risk posed by the shackles and long pants was so obvious that the supervising officials must have been aware that [the plaintiff] could fall." *Id.* It reasoned that "[c]losing one's eyes and doing nothing in the face of such manifest risk, a rational jury could find, constitutes deliberate indifference to the inmate's safety and well-being." *Id.* Here, Plaintiff alleges that Toledo Correctional had elevator access and that Ms. Kroggel was aware of his permanent disabilities. (ECF No. 1, ¶ 20, PageID #11.) Therefore, the Court declines to dismiss this claim against Ms. Kroggel.

### II.B.4.b.ii. Dr. Porter

Defendants argue that Plaintiff's complaint fails to allege any "personal responsibility or level of culpability required to state a deliberate indifference claim" against Dr. Porter. (ECF No. 19, PageID #295.) Like his allegations against Ms. Kroggel, Plaintiff claims he fell down the stairs in May 2022 and fell in the day room in June 2022 "without the necessary assistance due to . . . Dr. Porter's . . . gross negligence in both cases." (ECF No., ¶ 20, PageID #11.) Unlike Ms. Kroggel, nowhere in the complaint does Plaintiff allege any interactions with Dr. Porter. Nor does he make any allegation showing or giving rise to an inference that Dr. Porter knew of his disabilities. Just because he is a doctor does not mean he treated Mr. Robinson

or knew of his condition.  Indeed, this allegation provides the only instance in the complaint outside the caption where Dr. Porter's name appears.  Although Plaintiff claims that he informed doctors, nurses, and appropriate supervisors about his disabilities, nowhere does he establish Dr. Porter's personal involvement in any deprivation of federal rights or that she knew about any of his conditions.  Moreover, "[g]ross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.'"  *Lewellen v. Metropolitan Gov't of Nashville & Davidson Cnty., Tenn.*, 34 F.3d 345, 351 (6th Cir. 1994) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)).  For these reasons, Plaintiff fails to state a claim against Dr. Porter.

### II.B.4.b.iii. Dr. De La Cruz

Defendants argue that Plaintiff's complaint "fail[s] to identify any specific action sufficient to sustain a claim for liability under § 1983" against Dr. De La Cruz, nor "does it contain sufficient facts to show Dr. De La Cruz's alleged actions . . . to state a medical deliberate indifference claim under the Eighth Amendment." (ECF No. 19, PageID #295.)  Mr. Robinson claims that he made "requests or recommendations" to Dr. De La Cruz "to see a specialist, such as a neurologist or foot doctor, hearing doctor, or eye doctor," which he was allegedly refused, and in doing so Dr. De La Cruz allegedly "refused to give Plaint. Robinson proper health care." (*Id.*, ¶ 23, PageID #11–12.)  Further, Plaintiff alleges that he used a walker and that Dr. De La Cruz told him that she would recommend physical therapy for him and not take away his walker for a period of time. (*Id.*, ¶ 27, PageID #12.)  Allegedly, these representations came after Dr. De La Cruz previously told Mr. Robinson that she was

going to take his walker and that they did not offer physical therapy or referrals to specialists. (*Id.*)

Taking Plaintiff's allegations as true at this stage, there are no allegations of personal conduct on behalf of Dr. De La Cruz that amount to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Reilly*, 680 F.3d at 624. At best, Dr. De La Cruz's refusal of a referral to a specialist amounts to negligence. But the Eighth Amendment does not constitutionalize a claim for medical malpractice, if there was any here. *See Reilly*, 680 F.3d at 627 (citing *Estelle*, 429 U.S. at 105–06). In *Reilly*, the *pro se* plaintiff alleged that his doctor in prison failed to "promptly refer [Plaintiff] to or consult with [a] . . . specialist," "provide timely . . . medical care," and ensure the plaintiff was "evaluated by a physician." *Id.* at 625. The Sixth Circuit determined that "[t]hese allegations may support a claim for professional negligence, but under established law, deliberate indifference 'entails something more than mere negligence.'" *Id.* (quoting *Blackmore*, 390 F.3d at 895). So too here. Because Plaintiff does not allege any facts that support the subjective test that Dr. De La Cruz knew of or disregarded "an excessive risk to inmate health or safety," Plaintiff fails to state a claim against Dr. De La Cruz. *Farmer*, 511 U.S. at 837.

\*     \*     \*

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims against Dr. Porter and Dr. De La Cruz and **DENIES** dismissal of Plaintiff's claim against Ms. Kroggel.

24

## II.B.5. Threat of Force

Plaintiff alleges that there was an incident at Toledo Correctional in which "SRT" forced Plaintiff to submit to a strip search "even though they didn't have cause for that type of search." (ECF No. 1, ¶ 19, PageID #10–11.)  He claims that Defendant Major Brown "threatened to use force including the use of a pepper ball gun if Plaint. Robinson refused to submit to the strip search."  (*Id.*)  Defendants argue that Plaintiff's complaint provides no indication that Major Brown used any force or that his threat was a constitutional violation.  (ECF No. 19, PageID #295–97.)  Plaintiff does not allege what constitutional right Major Brown's alleged actions violated.  The Court liberally construes this claim as arising under the Eighth Amendment. *Martin*, 391 F.3d at 712.

Through the Fourteenth Amendment's Due Process Clause, the Eighth Amendment prohibits State officials from inflicting "cruel and unusual punishments" on prison inmates.  U.S. Const. amends. VIII & XIV; *Wilson v. Seiter*, 501 U.S. 294, 296 (1991).  Pursuant to this prohibition, prison officials "must take reasonable measures to guarantee the safety of the inmates."  *Rhodes v. Michigan*, 10 F.4th 665, 673 (6th Cir. 2021) (internal quotation marks omitted).  "[N]ot every unpleasant experience a prisoner might have while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Barndt v. Corrections Corp. of America*, No. 4:11-cv-0831, 2011 WL 3862070, at *3 (N.D. Ohio Aug. 31, 2011).  The Eighth Amendment prohibits conduct by prison officials that involves the

"unnecessary and wanton infliction of pain." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

To establish a claim under the Eighth Amendment, "the prisoner must satisfy both an objective and a subjective component." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Under the objective analysis, the pain inflicted must be "sufficiently serious." *Id.* (quoting *Wilson*, 501 U.S. at 298). On this score, Plaintiff's claim fails as a matter of law. There was no pain inflicted because Plaintiff does not allege that Major Brown used force against him. Because Plaintiff fails to satisfy the objective test, he fails to state a claim against Major Brown, and the Court need not consider the subjective test.

### II.B.6. Retaliation Claim

Plaintiff alleges that he submitted a request for informal complaint resolution claiming that the cashier's office did not follow the Ohio Administrative Code when it denied his status as indigent. (ECF No. 1, ¶ 32, PageID #13.) Plaintiff alleges that Defendant Chief Inspector Lambert issued to Plaintiff two separate 90-day "ICR/Grievance suspensions," which Plaintiff claims were "in retaliation of Plaint. Robinson making legitimate complaints." (*Id.*, ¶ 33, PageID #13.) Defendants argue that the Ohio Administrative Code authorized Chief Inspector Lambert to restrict Plaintiff's access to the grievance system "as the result of his persistent refusal to take no for an answer concerning his redundant informal complaint resolutions, grievances and appeals insisting that he is indigent." (ECF No. 19, PageID #297.) Plaintiff does not specifically claim that this alleged retaliation violated his First Amendment rights, although he does allege that his First Amendment rights were

violated in the header and last page of his complaint.  (ECF No. 1, Page ID #1 & #16.)
The Court liberally construes this allegation to be a First Amendment relation claim.
*Martin*, 391 F.3d at 712.

To state a claim for First Amendment retaliation, Plaintiff must plead that
(1) he engaged in a constitutionally protected activity; (2) Defendants' adverse action
caused him to suffer an injury that would likely chill a person of ordinary firmness
from continuing to engage in that activity; and (3) the adverse action was motivated,
at least in part, as a response to the exercise of Plaintiff's constitutional rights.  *Leary
v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) (citations omitted).  Defendants argue
that Plaintiff's complaint "fails to allege the retaliatory motive required to state a
retaliation claim against any prison official" because "both the protected conduct and
the adverse action Plaintiff claims revolve solely around his flagrant abuse and
misuse of the grievance process."  (ECF No. 19, PageID #298.)

### II.B.6.a. Constitutionally Protected Activity

"It is well established that prisoners have a constitutional right to file
grievances against correctional employees."  *Pasley v. Conerly*, 345 F. App'x 981, 984
(6th Cir. 2009) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *see also
Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (determining that the use of the
inmate grievance mechanism to file grievances was protected conduct).  "[I]f a
prisoner violates a legitimate prison regulation, he is not engaged in 'protected
conduct,' and cannot proceed beyond step one" of the retaliation analysis.
*Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999).  Further, a prisoner's First
Amendment right to file institutional grievances without being subject to retaliation

27

"only extends to the filing of non-frivolous grievances." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445–46 (6th Cir. 2005) (citations omitted). Plaintiff does not specifically state the contents of his "legitimate complaints" apart from his informal complaint challenging the denial of his indigency status. (ECF No. 1, ¶¶ 32–33, PageID #13.) Plaintiff took issue with a policy regarding the determination of his indigency status, and he claimed he lacked access to do further research. (*Id.*, ¶ 32, PageID #13.) Although Defendants argue these indigency challenges may have been "redundant," at the pleading stage, nothing in the complaint suggests that Mr. Robinson filed multiple requests. Nor do the pleadings show that the grievance was frivolous. Therefore, the Court treats Plaintiff as pleading a constitutionally protected right to contest his indigency status. *See Pasley*, 345 F. App'x at 985 (determining that, because the plaintiff's threatened grievance was "arguably legitimate, his conduct was arguably protected by the First Amendment").

### II.B.6.b. Adverse Action

In *Brooks v. Yates*, No. 1:09-cv-922, 2012 WL 2115301, at *13 (S.D. Ohio Mar. 30, 2012), the court determined that, because the defendant "merely restricted Plaintiff to filing 2 informal complaints per week for a period of 90 days," this "limited restriction . . . did not abridge any of Plaintiff's constitutional rights." The Sixth Circuit recognizes that "placement on modified access status does not constitute an adverse action when the protected activity was filing administrative grievances." *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)) (citing *Walker*, 128 F. App'x at 446). In *Jackson*, the Sixth Circuit reasoned that a modified access restriction "would not

28

deter a person of ordinary firmness from pursuing non-frivolous grievances against prison officials." *Id.*

Here, Plaintiff claims that he was subjected to "two separate 90 day ICR/Grievance suspensions." (ECF No. 1, ¶ 33, PageID # 13.) Under Rule 5120-9-31(E) of the Ohio Administrative Code, Chief Inspector Lambert has the authority to restrict Plaintiff's access to the prison grievance system. When doing so, the Ohio Department of Rehabilitation and Correction must make provisions "to ensure that the inmate can pursue issues that could present a substantial risk of physical injury, such as medical concerns, through the inmate grievance procedure," and that inmates must be notified of any restriction in writing. Ohio Admin. Code Rule 5120-9-31(E). Plaintiff does not allege that he was unable to pursue a grievance presenting a substantial risk of physical injury or that his suspension did not afford him the ability to pursue a grievance regarding a substantial risk of physical injury or a medical concern. To the contrary, his suspensions fall squarely within the Sixth Circuit's reasoning that restrictions of this sort "would not deter a person of ordinary firmness from pursuing non-frivolous grievances against prison officials." *Jackson*, 158 F. App'x at 660.

Therefore, the adverse action of which Plaintiff complains did not cut off his constitutionally guaranteed access to the grievance process. Plaintiff fails to state a retaliation claim.

### II.B.7. General Claims

Several of Plaintiff's claims in his complaint have no connection to any Defendant. "Merely listing names in the caption of the complaint and alleging

constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corrections Corp. of America*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–57 (1978)).  In *Gilmore*, despite listing 22 individuals in the caption of his complaint, the *pro se* plaintiff claimed in the body of his complaint that the "staff and security" of the correctional institution violated his constitutional rights.  *Id.*  Therefore, the Sixth Circuit affirmed the dismissal of those claims.  *Id.*

Like the plaintiff in *Gilmore*, Plaintiff in this case makes multiple allegations that do not identify any Defendant regarding the alleged incidents at Toledo Correctional.  These allegations include the following:  "Robinson was unnecessarily extracted from his cell with excessive force;" "some of Robinson's property was lost or stolen by staff;" "[Mr. Robinson's] [p]roperty being denied improperly;" "Robinson has attempted to get approval for his emotional support animal;" and "[Mr. Robinson] attempted to gain approval for a prescription of medical marijuana."  (ECF No. 1, ¶¶ 21, 30 & 34, PageID #11–14.)  The Court cannot infer from these claims which, if any, Defendant might have committed the actions complained of.

### II.B.8. Policy Violations

Plaintiff alleges violations of "the code of conduct and contractual agreements" regarding "proper medical, mental, and dental health care," violations of "proper policy pertaining to the control of contraband and property," violations of "proper fall protocol," insufficient policy decisions regarding indigency status, and refusal to print paper copies of grievances.  (*Id.*, ¶¶ 20–21, 28, 32 & 34, PageID #11–13.)  Also, he

30

claims that the Ohio Department of Rehabilitation and Correction has banned Maiya McCoy from visiting him. (*Id.*, ¶ 18, PageID #10.)

"[A]lleged violations of ODRC policy do not state a claim under § 1983" because "Section 1983 does not provide a remedy for violations of state laws or regulations." *Tolliver v. Ohio Dep't of Rehab. & Corr.*, No. 2:22-cv-4567, 2023 WL 2990186, at *8 (S.D. Ohio Apr. 18, 2023) (citations omitted); *see also Brown v. Mahlman*, No. 1:233-cv-239, 2022 WL 17817615, at *3 (S.D. Ohio Dec. 19, 2022) (dismissing alleged violations of Department policy because they "fall outside the scope of § 1983"). A defendant's "alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Id.* (citations omitted). Therefore, none of these alleged violations state a claim under Section 1983.

### II.B.9. Official Capacity Claims

Plaintiff's suit against Defendants in their official capacities is a suit against the State. *Graham v. Kentucky*, 473 U.S. 159, 165–66 (1985); *see also Hollis*, 480 F. Supp. 3d at 836 (determining that the warden was a State employee). The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Suing officials in their official capacities for "acts performed within the scope of [their] authority is equivalent to suing the governmental entity itself." *Graham*, 473 U.S. at 166 (1985).

"For the State of Ohio and ODRC, the Eleventh Amendment provides immunity from suits brought in federal court." *Kirkland v. ODRC*, No. 4:23-cv-00305,

31

2023 WL 8807240, at *5 (N.D. Ohio Dec. 19, 2023) (citing *Welch v. Texas Dep't of Highways & Publ. Transp.*, 483 U.S. 468 (1987)). While States may waive their Eleventh Amendment immunity, "Ohio has not done so for cases brought under Section 1983." *Id.* (citing *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992)). Eleventh Amendment immunity "extends to State agents and instrumentalities, like ODRC." *Id.* (citing *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 366 (6th Cir. 2008)). Therefore, Plaintiff's Section 1983 claims against the ODRC Defendants in their official capacities must fail.

*    *    *

For these reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.

## II.    The American Correctional Association's Motion to Dismiss

The American Correctional Association moves to dismiss Plaintiff's Section 1983 claims against it. The Court limits its analysis to the allegations of the complaint and does not go outside the pleadings at this stage of the proceedings. Therefore, the Court need not and does not convert this motion to one for summary judgment.

### II.A.   Under Color of Law

Section 1983 provides a cause of action against a person who acts "under color of" law. 42 U.S.C. § 1983. "A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). The statute only reaches the actions of a person

who acts under color of law.  Therefore, a "private party's actions constitute state action . . . where those actions may be 'fairly attributable to the state.'"  *Chapman v. Highbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (quoting *Lugar*, 457 U.S. at 937); *see also Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (determining that the "principal inquiry" regarding whether a private party's actions constitute State action is whether they are "fairly attributable to the state") (quoting *Lugar*, 457 U.S. at 937).

According to the American Correctional Association, every court that has considered the issue has found that it is a private actor and not a proper defendant in an action under Section 1983.  (ECF No. 24, PageID #315 n.2.)  However, it fails to cite or discuss any of these cases.  Within the Sixth Circuit, one district court appears to have so ruled.  *See Bumpas v. Corrections Corp. of America*, No. 3:10-1055, 2011 WL 3841674, at *5 (M.D. Tenn. Aug. 30, 2011) (concluding that "the plaintiff has not set forth any allegations supporting a conclusion that [it is a] state actor[] for the purpose of Section 1983.").

### II.B.  State Action Tests

The Supreme Court employs three tests to assess whether a private party's actions constitute State action.  *See Chapman*, 319 F.3d at 833 (citing *Wolotsky*, 960 F.2d at 1335).  These tests are:  "(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test."  *Id.*  Recent cases in the Sixth Circuit add a fourth test, "the entwinement test," which involves a similar analysis to the symbiotic relationship test.  *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc.*, 780 F. App'x 197, 204 (6th Cir. 2019) (quoting *Marie v. American Red Cross*, 771 F.3d 344, 362 & n.6 (6th Cir. 2014)).  Defendant argues

33

that Plaintiff fails to satisfy these tests to demonstrate that it is a State actor for purposes of his Section 1983 claims. (ECF No. 24, PageID #316.) The Court assesses each in turn.

### II.B.1. The Public Function Test

"Under the public function test, 'a private entity may qualify as a state actor when it exercises powers traditionally exclusively reserved to the State." *Miller v. Gettel*, No. 22-1034, 2023 WL 2945340, at *4 (6th Cir. Apr. 14, 2023) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019)) (cleaned up). The Supreme Court recognizes that "very few" functions satisfy this test. *Halleck*, 587 U.S. at 809 (quoting *Flagg Bros*, 436 U.S. at 158). The Sixth Circuit interprets this test "narrowly," with only actions such as "holding elections," "exercising eminent domain," and "operating a company-owned town" satisfying this requirement. *Chapman*, 319 F.3d at 833 (citations omitted).

Even liberally construing Plaintiff's complaint, the American Correctional Association engaged in no such activity. All that Plaintiff alleges is that it audited the Toledo Correctional Institution and that the prison "passed the audit." (ECF No. 1, ¶ 24, PageID #12.) Plaintiff provides no arguments or facts to demonstrate that accreditation "is one of the very few functions that are 'traditionally and exclusively performed' by government." *Miller*, 2023 WL 2945340, at *4 (citing *Halleck*, 587 U.S. at 809). Nor has the Court located any authority for such a proposition. Therefore, under the public function test, the complaint fails to plead that the American Correctional Institution is a State actor.

34

## II.B.2. The State Compulsion Test

"Under the 'state compulsion' test, the state must 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Siskaninetz v. Wright State Univ.*, 175 F. Supp. 2d 1018, 1023 (S.D. Ohio 2001) (citing *Wolotsky*, 960 F.2d at 1335). Mere correspondence between State actors and private actors is not sufficient to establish "coercive power" or "significant encouragement." *Lansing v. City of Memphis*, 202 F.3d 821, 829–30 (6th Cir. 2000). Further, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Snodgrass-King Pediatric Dental Assocs.*, 780 F. App'x at 204 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). A plaintiff must establish that State actors "coerced or participated" in the private actor's decision-making process. *Id.* (quoting *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007)).

Here, the allegations of the complaint establish, if anything, the opposite conditions for application of the State compulsion test. Rather than the State coercing or participating in the decision-making process of the American Correctional Association, the accreditation process about which Plaintiff complains works in the opposite direction. Nor does Plaintiff allege that any governmental entity or agency attempted to coerce or compel the Association to take any action. The American Correctional Association's audit of the Toledo Correctional Institution, without more, does not demonstrate "coercive power" or "significant encouragement" on the part of any State actor. At most, Toledo Correctional's use of the audit amounts to "mere

approval of or acquiescence in" ACA's actions, which is not enough.  *Snodgrass-King Pediatric Dental Assocs.*, 780 F. App'x at 204 (quoting *Blum*, 457 U.S. at 1004). Therefore, Plaintiff fails to allege that the American Correctional Association is a State actor under the State compulsion test.

### II.B.3. The Symbiotic Relationship or Nexus Test

"Under the symbiotic relationship or nexus test, a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 834 (citations omitted).  "[M]ere cooperation simply does not rise to the level of merger required for a finding of state action." *Marie*, 771 F.3d at 363 (citing *Lansing*, 202 F.3d at 831).  Instead, the "plaintiff's allegations must show that the state is 'intimately involved' in the challenged conduct." *Estate of Q.W. v. Lucas Cnty. Child. Servs.*, 682 F. Supp. 3d 671, 682 (N.D. Ohio 2023) (citing *Wolotsky*, 960 F.2d at 1335).  A contractual relationship does not establish this level of intimate involvement, even where the contract "subjects the private actor to an 'extensive and detailed' set of requirements." *Burke v. Ohio Dep't of Rehab. & Corr.*, No. 2:21-cv-48, 2022 WL 93326, at *3 (S.D. Ohio Jan. 10, 2022) (citing *Wolotsky*, 960 F.2d at 1336). "[A] plaintiff must show that the state played a role in the decision made by the private actor that led to the deprivation of Plaintiff's rights, either by showing, for example, that the contract necessitated the private actor's decision or that state actors were involved in the decision." *Id.* (citation omitted) (cleaned up).

Plaintiff's allegations fail to allege anything more than a contractual relationship between the State and the American Correctional Association.  No

allegation or argument suggests or gives rise to an inference that that contract "necessitated the private actor's decision," or that "state actors were involved in the decision." *Burke*, 2022 WL 93326, at *3 (citation omitted). Therefore, Plaintiff fails to allege that the American Correctional Association is a State actor under the symbiotic relationship or nexus test.

### II.B.4.      The Entwinement Test

Under the entwinement test, Plaintiff must allege that Defendants conduct is "entwined with governmental policies" or "entwined in [the private entity's] management or control." *Marie*, 771 F.3d at 363–64 (citing *Vistein v. American Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009)). "The crucial inquiry under the entwinement test is whether the 'nominally private character' of the private entity 'is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." *Vistein*, 342 F. App'x at 128 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Evidence that a public entity acted in compliance with the recommendations of a private entity "does not transform the private entity into a state actor." *Id.* (citing *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 194 (1988)).

Here too, Plaintiff's complaint at most alleges that the State acted in compliance with the audit of the Toledo Correctional Institution that the American Correctional Association performed. Nothing about that fact pleads that its conduct is so closely entwined with that of the State that it is subject to liability under Section

1983. Further, any allegation that Toledo Correctional reformed or modified its practices to comply with the American Correctional Association's standards or the results of its audit does not transform the Association into a State actor. *Vistein*, 342 F. App'x at 128 (quoting *Brentwood Acad.*, 531 U.S. at 296). Therefore, Plaintiff fails to allege that the American Correctional Association is a State actor under the entwinement test.

*     *     *

For these reasons, the Court concludes that the complaint fails to state a claim against the American Correctional Association and, therefore, **GRANTS** Defendant's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the motion of the ODRC Defendants to dismiss. Specifically, the Court **DENIES** the motion as to Plaintiff's deliberate indifference claim against Hannah Kroggel and **GRANTS** the motion in all other respects. Further, the Court **GRANTS** the American Correctional Association's motion to dismiss.

**SO ORDERED.**

Dated: March 11, 2025

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio