**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARTIN ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>LONNIE BUTLER, *et al.*,<br><br>Defendants. | ) | Case No. 3:23-cv-01611<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge<br>Jennifer Dowdell Armstrong |

**OPINION AND ORDER**

Proceeding without a lawyer, Plaintiff Martin Robinson brings civil rights claims against 71 Defendants associated with the Ohio prison system. In doing so, he alleges numerous instances and forms of mistreatment across four different prisons. After previous Court orders severed his claims and dismissed many Defendants, Plaintiff only has one remaining claim against Defendant Hannah Kroggel, an employee at Toledo Correctional Institution, for deliberate indifference to his medical needs. Defendant moves for summary judgment. For the reasons discussed below, the Court **GRANTS** Defendant's motion for summary judgment.

**STATEMENT OF FACTS**

In the present procedural posture, the Court construes the facts in favor of the non-moving party. Where the record presents material disputes or competing versions of the facts, the Court so notes.

In 2022, Plaintiff Martin Robinson was a 43-year-old inmate at Toledo Correctional Institution who claimed to suffer from "permanent disabilities, dating

back to July 10, 2009, as well as re-injuries and new injuries suffered since." (ECF No. 1, ¶ 20, PageID #11; ECF No. 44-2, PageID #495.) Knowing that the prison facility had an elevator available to disabled inmates, Mr. Robinson informed prison medical staff and supervisors of his disability. (ECF No. 1, ¶ 20, PageID #11.) At some point, Mr. Robinson allegedly communicated in writing with "healthcare administrator Mrs. K" regarding his disabilities, but she directed him to use the stairs. (*Id.* (cleaned up).) Subsequently, Mr. Robinson fell twice within the prison, in May and June 2022. (*Id.*)

Defendants identified "Mrs. K" as Defendant Hannah Kroggel. (ECF No. 19.) Defendant provides medical records, incident reports, and surveillance footage logs relating to Mr. Robinson's allegations. (ECF No. 44-2; ECF No. 44-3; ECF No. 48.) Additionally, she represents that she is not healthcare administrator and has not served in that role since 2018, before Mr. Robinson's incarceration at Toledo Correctional Institution. (ECF No. 44-2, ¶ 2, PageID #492; ECF No. 44, PageID #446.) In her current role, Ms. Kroggel conducts performance audits and maintains records for the institution but is not "involved in the day-to-day decisions prison officials make regarding individual inmates or in specific one-on-one instances." (ECF No. 44-2, ¶ 3, PageID #492.) She denies that she refused Mr. Robinson an elevator pass and explains that only prison doctors have the authority to grant elevator passes. (*Id.*, ¶ 5, PageID #492–93.)

The medical records Defendant provides indicate the following. On April 27, 2022, Mr. Robinson met with a prison doctor, Dr. Lawrence Porter, and requested an

elevator pass. (ECF No. 44-2, PageID #495.) Mr. Robinson explained that he was otherwise at risk of falling down the stairs "due to dizziness, balance problems, and headaches." (*Id.*) At the same time, Mr. Robinson refused to submit to a full physical examination, and he refused to authorize Dr. Porter to review past medical records. (*Id.*) Dr. Porter briefly assessed Mr. Robinson for a balance disorder and otherwise took the matter under advisement. (*Id.*, PageID #496.) When asked, Mr. Robinson's corrections officer informed medical staff that Mr. Robinson typically walked with a steady gait and exhibited no signs that he struggled with stairs. (*Id.*, PageID #497–98.)

On May 26, 2022, Mr. Robinson spoke with healthcare administrator Cheryl Klocinski to address "an informal complaint" he made regarding Dr. Porter's failure to issue him an elevator pass. (*Id.*, PageID #499.) Klocinski explained that Mr. Robinson had an upcoming doctor's appointment and that he would receive an elevator pass immediately if the doctor authorized one. (*Id.*) Dissatisfied with this response, Mr. Robinson stated, "I'm going to have to fall down the stairs and sue the state then." (*Id.*) Noting that Mr. Robinson seemed "extremely agitated," Klocinski ended their meeting abruptly and filed an incident report. (*Id.*, PageID #499 & #514.)

On May 27, 2022, Mr. Robinson fell down a flight of stairs. As captured by an overhead camera, along with a group of other inmates, he walked to the top of the stairs, paused on the second step, and then slowly bowed forward while gripping the railing and rolling to the next landing. (ECF No. 48, Stairwell Video at 01:30–2:00.) He remained on the landing in fetal position as prison staff came to assist. (*Id.*)

A similar incident occurred seventeen days later, on June 13, 2022. While walking slowly around the mess hall, Mr. Robinson paused, bowed forward, braced himself with his arms, and rolled to the floor, remaining in fetal position as staff responded to provide aid. (*Id.*, Overhead Camera at 00:20-3:00.) While the surveillance footage is silent, incident reports written by responding staff allege that Mr. Robinson "was being disrespectful and yelling at Nurse Weber, complaining of poor medical care" and that he refused to allow Dr. Porter to examine him. (ECF No. 44-3, PageID #512-13.)

On June 16, 2022, Dr. Porter again met with Mr. Robinson. (ECF No. 44-2, PageID #500.) Dr. Porter noted that Mr. Robinson refused to walk without assistance for the previous two weeks. (*Id.*) Mr. Robinson told Dr. Porter that he was experiencing muscle pain in his neck, hips, shoulders, and feet, as well as weakness and numbness in his extremities. (*Id.*) In listing his complaints, he made no reference to dizziness, balance issues, or headaches. (*Id.*) Dr. Porter found that Mr. Robinson's strength was normal, and he noted that surveillance footage supported his suspicion that Mr. Robinson only pretended to fall to obtain an elevator pass. (*Id.*, PageID #500–02.) Despite his suspicions, Dr. Porter authorized a two-week trial with a walker "to better observe his behaviors." (*Id.*, PageID #502.)

On June 29, 2022, Dr. Porter met with Mr. Robinson again. He found that Mr. Robinson was using his walker but refusing to leave the floor until he received an elevator pass. (ECF No. 44-2, PageID #503.) When Dr. Walker tried to examine Mr. Robinson's gait, he found that Mr. Robinson exhibited a halting but stable gait

and that Mr. Robinson led with the left foot when he used a walker and with the right foot when he walked unaided. (*Id.*) Dr. Porter authorized continued use of the walker as well as strengthening exercises. (*Id.*, PageID #504.) He declined to authorize an elevator pass "in view of recent manipulation toward that" and because Mr. Robinson still refused to authorize review of his prior medical history. (*Id.*)

On February 10, 2023, Mr. Robinson met with a different physician, Dr. Kathleen Meehan de la Cruz and made her aware that he had fallen twice and was experiencing dizziness, lightheadedness, and severe headaches. (*Id.*, PageID #505–06.) Dr. de la Cruz noted that Mr. Robinson exhibited "gait abnormalities and tremor which are inconsistent and atypical of well-defined disease entities" (*id.*, PageID #507) and that his reported symptoms were inconsistent with his exam history (*id.*, PageID #506). When Dr. de la Cruz responded to Mr. Robinson to point out "discrepancies in his statements," he grew angry until she "feared for her own safety" and abruptly ended the appointment. (Id., PageID #506–07.)

In addition to these records, Defendant provides records of the internal grievances Mr. Robinson filed with the Ohio Department of Rehabilitation and Correction. (ECF No. 44-1.) Although Mr. Robinson's grievance filings are numerous, an assistant chief inspector represents that Mr. Robinson has not exhausted the administrative process for the allegations he presents here. (ECF No. 44-1, ¶¶ 12–13, PageID #457.)

## STATEMENT OF THE CASE

On February 17, 2021, Plaintiff filed a prior civil rights complaint relating to the conditions of his confinement at the London Correctional Institution, Warren Correctional Institution, and Madison Correctional Institution. *See Robinson v. Butler*, No. 1:21-cv-382 (N.D. Ohio) ("*Robinson I*"). The Court transferred that action to the Southern District of Ohio, which dismissed it for failure to prosecute. *Robinson v. Butler*, No. 2:21-cv-774, 2022 WL 1487065, at *1 (S.D. Ohio May 11, 2022). Mr. Robinson also failed to prosecute his appeal from that dismissal. *See Robinson v. Butler*, No. 22-351, 2023 WL 3868660, at *1 (6th Cir. Apr. 4, 2023).

On August 17, 2023, Plaintiff filed this *pro se* complaint ("*Robinson II*"), raising claims against each Defendant in both their individual and official capacities under 42 U.S.C. § 1983 and noting that this case might be a refiling of *Robinson I*. (ECF No. 1; ECF No. 1-1.) Plaintiff's complaint in *Robinson II* includes additional allegations regarding his current incarceration at the Toledo Correctional Institution. (ECF No. 1, ¶¶ 18–36, PageID #10–14.)

On January 2, 2024, the Court severed Plaintiff's claims concerning the conditions of his confinement at London Correctional, Warren Correctional and Madison Correctional and transferred them to the Southern District of Ohio. (ECF No. 8, PageID #80–81.) Also, the Court dismissed Plaintiff's claims against certain Defendants. (*Id.*)

Following that order, this action only involved Plaintiff's claims concerning the conditions of his confinement at Toledo Correctional. (*Id.*, PageID #89.) Of those

Defendants who remained in this case, the State Defendants and the American Correctional Association separately moved to dismiss. (ECF No. 19; ECF No. 24.) In response to these motions, the Court dismissed all of Plaintiff's remaining claims except for his deliberate indifference claim against Defendant Hannah Kroggel. (ECF No. 32, PageID #380.)

Ms. Kroggel moves for summary judgment. In doing so, she argues that Plaintiff failed to satisfy the exhaustion requirements of the Prison Litigation Reform Act and failed to establish the elements of a deliberate indifference claim against her. (ECF No. 44.) In response, Plaintiff alleges that the documents Defendant Kroggel provides to the court are "picked and chose[n] out [of] the total or complete record" and that the video evidence is "falsif[ied]." (ECF No. 50, PageID #530–31.)

**ANALYSIS**

Under the Prison Litigation Reform Act of 1996, a prisoner may not bring an action "with respect to prison conditions under section 1983 . . . until such administrative procedures as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Complete exhaustion is a mandatory requirement, meaning failure to exhaust cannot be excused, even under special circumstances. *Ross v. Blake*, 578 U.S. 632, 638–39 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Jones v. Bock*, 549 U.S. 199, 211 (2007)); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the "PLRA's exhaustion requirement applies to all inmate suits about prison life" including "whether they allege excessive force or some other wrong"). Even if the administrative process does not provide the

monetary relief an inmate seeks, the inmate must first pursue all available administrative remedies before initiating suit. *Porter*, 534 U.S. at 524.

However, the Act does not provide a uniform exhaustion standard. Instead, the inmate's correctional institution defines the applicable administrative rules and procedures. *Jones*, 549 U.S. at 218. To comply with the exhaustion requirement, an inmate must "take advantage of each step the prison holds out for resolving the claim internally and by following critical procedural rules of the prison's grievance process." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (cleaned up); *see also Woodford*, 548 U.S. at 90–91. Compliance with these rules and procedures is required "even if the prisoner subjectively believes the remedy is not available, . . . even when the state cannot grant the particular relief requested, . . . and 'even where [the prisoners] believe the procedure to be ineffectual or futile.'" *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations omitted). Further, "an inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)).

Failure to exhaust is an affirmative defense, meaning "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, if an inmate fails to exhaust, the defendants may raise exhaustion as an affirmative defense on which they bear the burden of proof. *Lamb*, 52 F.4th at 295 (quoting *Surles*, 678 F.3d at 457 n.10). "[J]udges may resolve factual

disputes relevant to the exhaustion issue without the participation of a jury." *Lee v. Willey*, 789 F.3d 673, 677–78 (6th Cir. 2016) (citations omitted).

"Although the PLRA's exhaustion requirement is strictly construed, the statute 'contains its own, textual exception to mandatory exhaustion' that applies when remedies are not 'available.'" *Lamb*, 52 F.4th at 292 (quoting Ross, 578 U.S. at 642). The statute expressly forecloses a federal action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An administrative remedy is not available within the meaning of the statute to inmates and not subject to the exhaustion requirement where: (1) the administrative grievance procedure "operates as a simple dead end"; (2) the administrative grievance procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

Although Mr. Robinson filed numerous grievances, the record shows that none relates to the events giving rise to this lawsuit. (ECF No. 44-1, ¶ 12, PageID #457.) Moreover, Plaintiff does not dispute that the Prison Litigation Reform Act applies or that he failed to exhaust his claim against Ms. Kroggel. (ECF No. 50.) Because Mr. Robinson failed to exhaust his administrative remedies, the Act requires dismissal of Plaintiff's lawsuit. The statute's plain language requires exhaustion before the filing of a lawsuit: "No action shall be brought . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Mr. Robinson did not exhaust his administrative remedies, the Court must

dismiss his remaining claim without prejudice. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

## CONCLUSION

For the foregoing reasons, the Court **DISMISSES** Plaintiff's claim against Hannah Kroggel for deliberate indifference **WITHOUT PREJUDICE**.

**SO ORDERED.**

Dated: October 26, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio